# AGREEMENT TO PROVIDE LABOR SERVICES

This Agreement is made January 18, 2008 (the Effective Date) between, Royal Hospitality Services, LLC (Provider), and Beau Rivage Resorts, INC (Customer).

## RECITALS:

Provider is in the business of providing labor services to commercial establishments and Customer desires to retain the services of Provider to provide the labor services more particularly described in this Agreement on the terms and conditions set forth herein.

## AGREEMENT:

NOW, THEREFORE, in consideration for the mutual promises herein contained and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. SERVICES. Customer hereby engages Provider to perform those labor services described in Exhibit A to this Agreement (the Services) at those locations identified in Exhibit A, and Provider hereby agrees to perform such services in a workmanlike manner in accordance with the standards of quality prevailing in the industry. Provider will cause all services to be performed in compliance with all applicable laws, rules and regulations, including the Occupational Safety and Health Act of 1970.

2. PERSONNEL. Royal Hospitality Services, LLC (Provider) as an independent provider shall pay and report all federal and state income tax withholding, social security taxes, and unemployment insurance applicable. Royal Hospitality Services, LLC employees performing the services shall not be entitled to participate in health or disability insurance, retirement benefits, or other welfare or pension benefits (if any) to which employees of Customer may be entitled.



3. INSURANCE. Provider will maintain in effect such amounts of workman's compensation insurance as are required by applicable law and such amount of general liability insurance as are reasonable. During the term of this Agreement Provider shall maintain in effect a Janitorial/Housekeeping services Bond in the amount of twenty- five thousand dollars ($25,000).

4. COMPENSATION. As compensation for the services, Customer shall pay to Provider the amount of Thirteen Dollars and 53 cents ($13.53) per hour per worker engaged in performing the Services. Week will start on Sunday and end Saturday. Customer agrees to pay Provider the amount that is due each week (for week bill hours listed in the timesheets) and owing under the terms of this Agreement within five (5) days of billing date (next Friday).Customer shall make all payments directly to Provider.

5. TERMS. The terms of this Agreement shall be one (1) year from the Effective Date. However, either party for any reason upon seven (7) days written notice may terminate this Agreement.

6. INDEPENDENT CONTRACTOR STATUS. All workers furnished by the Provider pursuant to this agreement shall be and remain the employees of Provider at all times, and shall not at anytime or for any purpose whatsoever be employees of agents of the Customer. At no time shall any of the Providers employees be employed by the Customer.

7. NOTICES. All notices, requests, demands and other communications are required or may be given under this Agreement shall be deemed to have been duly given when received if personally delivered; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested, as follows:

If intended for Provider shall be addressed to:

Samvel Nikoghosyan
Royal Hospitality Services, LLC
1450 annunciation street, Unit 2215
New Orleans, LA 70130

If intended for Customer shall be addressed to:

_____
_____
_____
_____

8. GOVERNING LAW; BINDING EFFECT. This Agreement shall be construed in accordance with and governed by the laws of the State of Mississippi ~~Indiana~~. This Agreement shall be binding upon and inure to the benefit of the parties hereto and respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

PROVIDER:
Royal Hospitality Services, LLC
BY: *Samvel Nikoghosyan*
Title *President*

CUSTOMER:
Beau Rivage Resorts, INC
BY _____
Title _____

EXHIBIT A

## TO AGREEMENT FOR LABOR SERVICES

1. Description of Services:

   _____

2. Location of Facilities where services will be performed:

3. Minimum Number of Hours per Calendar Week per Person:

# CONTRACT LABOR AGREEMENT

## ADDENDUM

THIS ADDENDUM made as of this _16th_ day of _January_ 2008, by and between Beau Rivage Resorts, Inc. (hereinafter referred to as "Customer") and Royal Hospitality Services, LLC (hereinafter referred to as "Provider").

WHEREAS, Beau Rivage and Provider are entering into the "Agreement To Provide Labor Services " (the "Agreement") on the date hereof; and

WHEREAS, the purpose of this Addendum is to make certain additions and modifications to the Agreement.

NOW, THEREFORE, in consideration of the foregoing and the covenants contained herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Provider will perform and furnish, in a timely, effective and efficient manner, all the services described in the Agreement and this Addendum, and specifically furnish qualified employees to work on the general project(s) which may be hereinafter assigned to Provider by Customer. Provider's performance shall begin upon notification by Customer to Provider of the need for temporary services.

2. Customer shall provide to Provider the general specifications of the project and the qualifications of Provider's employees needed to accomplish the work of Customer. Provider (and Provider's employees) shall at all times be deemed an independent Provider and the relationship of these parties to Customer shall not at any time constitute any relationship other than that of an independent Provider, except as otherwise expressly provided herein.

3. Provider represents and warrants to Customer that during the term of this Agreement, Provider shall:

    (a) Assume responsibility for the payment of wages to each of the employees furnished to Customer hereunder.
    (b) Assume responsibility for the payment of payroll taxes and the collection of taxes from payroll for each employee furnished to Customer;
    (c) Retain the right of direction and control over the management of Workers' Compensation claims, claim filing and related procedures and statutory compliance with respect to employees furnished to Customer hereunder;
    (d) Implement and comply with all appropriate state and federal laws relating to reporting, sponsoring, filing, and maintaining benefit and welfare plans and be solely responsible for providing benefit and welfare plans for employees provided to Customer hereunder; and

4. As compensation for the services and work to be furnished and performed by the Provider, Provider shall invoice Customer, and Customer shall pay Provider a sum as set forth in the Agreement. Provider shall submit a weekly invoice which shall be accompanied by materials substantiating the calculation of the invoice amount.

5. In performing its obligations hereunder, Provider shall comply with all applicable laws and with all applicable orders, rules and regulations of constituted authority.

6. To the extent of Provider's negligence, Provider agrees to indemnify, defend, and save Customer harmless form and against any and all claims for bodily injury or death brought by or on behalf of Provider's employees arising out of the performance of this Agreement. In addition to Providers

duty to indemnify Customer as set forth above, Provider shall indemnify, defend, and save Customer harmless from and against any and all claims for bodily injury or death brought by or on behalf of LA, LLC, whom Provider has entered into a separate Agreement with and Customer is not a party to.

7. Provider shall have, on file, a valid I-9 Employment Eligibility Verification form and supporting documentation stating that all of Provider's employee(s) is/are authorized to work in the United States.

8. Provider agrees to maintain, for the term of this Agreement the following insurance,

   (i) Workers Compensation insurance which shall fully comply with the requirements of the state laws, as well as federal laws, if applicable, and covering all employees of Provider furnished to Customer in connection with the performance of Provider's obligations and duties under this Agreement. Such insurance shall include a Marine Employer's Liability endorsement,

   (ii) Comprehensive General Liability covering bodily injury liability of $1,000,000 for each person and $2,000,000 in the aggregate, property damage liability of $1,000,000, and

   (iii) Commercial Automobile Liability in the amount of $1,000,000.

9. Provider hereby acknowledges that MGM MIRAGE and Beau Rivage, their parent companies, subsidiaries and affiliates, are businesses that are or may be subject to and exist because of privileged licenses issued by governmental authorities. If requested to do so by MGM MIRAGE or Beau Rivage, Provider shall obtain any license, qualification, clearance or the like which shall be required of Provider by MGM MIRAGE or Beau Rivage or any regulatory authority having jurisdiction over MGM MIRAGE or Beau Rivage or any parent company, subsidiary or affiliate of MGM MIRAGE or Beau Rivage. If Provider fails to satisfy such requirement or if MGM MIRAGE or Beau Rivage, or any parent company, subsidiary or affiliate of MGM MIRAGE or Beau Rivage, is directed to cease business with Provider by any such authority, or if MGM MIRAGE or Beau Rivage shall in good faith determine, in MGM MIRAGE's or Beau Rivage's sole and exclusive judgment, that Provider or any of their officers, directors, employees, agents, designees or representatives (a) is or might be engaged in, or is about to be engaged in, any activity or activities, or (b) was or is involved in any relationship, either of which could or does jeopardize MGM MIRAGE's or Beau Rivage's business or such licenses, or those of their parent company, subsidiaries or affiliates, or if any such license is threatened to be, or is, denied, curtailed, suspended or revoked, this Agreement may be immediately terminated by MGM MIRAGE or Beau Rivage without liability to Provider. In addition, Provider hereby acknowledges that it is illegal for a denied license applicant or a revoked licensee (pursuant to the laws, rules and regulations of the Nevada and Mississippi gaming authorities), or a business organization under the control of a denied license applicant or a revoked licensee, to enter into, or attempt to enter into, a contract with MGM MIRAGE or Beau Rivage without the prior approval of the Nevada and Mississippi Gaming Commissions. Therefore, Provider hereby affirms, represents and warrants to MGM MIRAGE and Beau Rivage that it is not a denied license applicant, a revoked licensee or a business organization under the control of a denied license applicant or a revoked licensee, and Provider hereby agrees that this Agreement is subject to immediate termination by MGM MIRAGE or Beau Rivage if Provider should become a denied license applicant, a revoked licensee or a business organization under the control of a denied license applicant or a revoked licensee. In the event that this Agreement is terminated by MGM MIRAGE or Beau Rivage pursuant to this Section, and as applicable, (a) Beau Rivage shall pay to Provider a pro rata portion of the Performance Fee for any such portion of the Performance performed prior to such termination for which Provider has not already been paid and (b) Provider shall refund to Beau Rivage any portion of the Performance Fee, if any, which Beau Rivage has paid to Provider in connection with a portion of the Performance that has not, as of the date of such termination, been presented by Provider.

10. All notices, approvals and consents, demands and requests, which may be or are required to be given to any party by another party shall be in writing and shall be deemed to have been properly given if and when delivered personally, by telecopy (when sender receives confirmation), or sent by certified mail, return receipt requested, addressed as follows:

If to Customer:

Beau Rivage Resort and Casino
875 Beach Boulevard
Biloxi, Mississippi 39530
Attn: General Counsel

If to Provider:

Royal Hospitality Services, LLC
1450 Annunciation Street, Unit 2215
New Orleans, Louisiana 70130
Sambvel Nikoghosyan

11. The Agreement and this Addendum constitutes the entire agreement between Customer and Provider and there are no agreements, understandings, conditions, or representations, express or implied, with reference to the subject matter hereof that are not merged within or superseded hereby.

12. Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitration proceedings shall be conducted in Harrison County, Mississippi. Any and all legal, accounting and other costs and expenses incurred by the prevailing party shall be borne by the non-prevailing party. This Agreement shall be governed by and construed under and pursuant to the laws of the State of Mississippi applicable to contracts made and to be performed entirely within such State without regard to the conflicts of laws principles of such State.

13. "EQUAL EMPLOYMENT OPPORTUNITY – The EEO/AA Clauses are hereby incorporated by reference as required by 41 CFR 60-1.4, 41 CFR 60-250.4 and 41 CFR 60-741.4 and the Provider represents by signature and acceptance of this contract that he/she will comply with such Acts, Executive Order and rules and regulations and amendments thereto to the extent that same are applicable to the manufacture and/or sale of the goods and/or services supplied hereafter."

14. Provider hereby agrees that in the event (i) there is any default or alleged default by MGM MIRAGE or Beau Rivage under the Agreement or (ii) Provider has or may have any claim arising from or relating to the terms hereof, Provider shall not commence any lawsuit or otherwise seek to impose any liability whatsoever against Kirk Kerkorian or Tracinda Corporation. Provider hereby further agrees that neither Kirk Kerkorian nor Tracinda Corporation shall have any liability whatsoever with respect to this Agreement or any matters relating to or arising from this Agreement. Provider hereby further agrees that it shall not assert, or permit any party claiming through it to assert, a claim or impose any liability against either Kirk Kerkorian or Tracinda Corporation, either collectively or individually, as to any matter or thing arising out of or relating to this Agreement or any alleged breach or default of this Agreement by MGM MIRAGE or Beau Rivage. In addition, Provider agrees that neither Kirk Kerkorian nor Tracinda Corporation, individually or collectively, is a party to this Agreement or is liable for any alleged breach or default of this Agreement by MGM MIRAGE or Beau Rivage. Provider hereby further acknowledges and agrees to look solely to Beau Rivage, and not to MGM MIRAGE, its parent companies or other subsidiaries or affiliates, for any actual or alleged breach or default, if any, by MGM MIRAGE or Beau Rivage of this Agreement. In addition to Beau Rivage's right to do so,

3

MGM MIRAGE shall have the right to exercise on behalf of Beau Rivage any and all of Beau Rivage's rights and remedies under this Agreement.

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the date first set forth above.

Beau Rivage Resorts, Inc.
BY: _____
George Corchis
TITLE: President
DATE: 1/18/2008

Royal Hospitality Services, LLC
BY: _____
PRINTED NAME: Samuel Nikoghosyan
TITLE: President
DATE: 01/18/2008

4

CONTRACT LABOR AGREEMENT

ADDENDUM

THIS ADDENDUM made as of this 18th day of January 2006, by and between Beau Rivage Resorts, Inc. (hereinafter referred to as "Customer") and ProLabor One, LLC (hereinafter referred to as "Provider").

WHEREAS, Beau Rivage and Provider are entering into the "Agreement To Provide Labor Services " (the "Agreement") on the date hereof; and

WHEREAS, the purpose of this Addendum is to make certain additions and modifications to the Agreement.

NOW, THEREFORE, in consideration of the foregoing and the covenants contained herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Provider will perform and furnish, in a timely, effective and efficient manner, all the services described in the Agreement and this Addendum, and specifically furnish qualified employees to work on the general project(s) which may be hereinafter assigned to Provider by Customer. Provider's performance shall begin upon notification by Customer to Provider of the need for temporary services.

2. Customer shall provide to Provider the general specifications of the project and the qualifications of Provider's employees needed to accomplish the work of Customer. Provider (and Provider's employees) shall at all times be deemed an independent Provider and the relationship of these parties to Customer shall not at any time constitute any relationship other than that of an independent Provider, except as otherwise expressly provided herein.

3. Provider represents and warrants to Customer that during the term of this Agreement, Provider shall:

   (a) Assume responsibility for the payment of wages to each of the employees furnished to Customer hereunder.
   (b) Assume responsibility for the payment of payroll taxes and the collection of taxes from payroll for each employee furnished to Customer;
   (c) Retain the right of direction and control over the management of Workers' Compensation claims, claim filing and related procedures and statutory compliance with respect to employees furnished to Customer hereunder;
   (d) Implement and comply with all appropriate state and federal laws relating to reporting, sponsoring, filing, and maintaining benefit and welfare plans and be solely responsible for providing benefit and welfare plans for employees provided to Customer hereunder; and

4. As compensation for the services and work to be furnished and performed by the Provider, Provider shall invoice Customer, and Customer shall pay Provider a sum as set forth in the Agreement. Provider shall submit a weekly invoice which shall be accompanied by materials substantiating the calculation of the invoice amount.

5. In performing its obligations hereunder, Provider shall comply with all applicable laws and with all applicable orders, rules and regulations of constituted authority.

6. To the extent of Provider's negligence, Provider agrees to indemnify, defend, and save Customer harmless form and against any and all claims for bodily injury or death brought by or on behalf of Provider's employees arising out of the performance of this Agreement. In addition to Providers

1

duty to indemnify Customer as set forth above, Provider shall indemnify, defend, and save Customer harmless from and against any and all claims for bodily injury or death brought by or on behalf of LA, LLC, whom Provider has entered into a separate Agreement with and Customer is not a party to.

7. Provider shall have, on file, a valid I-9 Employment Eligibility Verification form and supporting documentation stating that all of Provider's employee(s) is/are authorized to work in the United States.

8. Provider agrees to maintain, for the term of this Agreement the following insurance,

   (i) Workers Compensation insurance which shall fully comply with the requirements of the state laws, as well as federal laws, if applicable, and covering all employees of Provider furnished to Customer in connection with the performance of Provider's obligations and duties under this Agreement. Such insurance shall include a Marine Employer's Liability endorsement,
   
   (ii) Comprehensive General Liability covering bodily injury liability of $1,000,000 for each person and $2,000,000 in the aggregate, property damage liability of $1,000,000, and
   
   (iii) Commercial Automobile Liability in the amount of $1,000,000.

9. Provider hereby acknowledges that MGM MIRAGE and Beau Rivage, their parent companies, subsidiaries and affiliates, are businesses that are or may be subject to and exist because of privileged licenses issued by governmental authorities. If requested to do so by MGM MIRAGE or Beau Rivage, Provider shall obtain any license, qualification, clearance or the like which shall be required of Provider by MGM MIRAGE or Beau Rivage or any regulatory authority having jurisdiction over MGM MIRAGE or Beau Rivage or any parent company, subsidiary or affiliate of MGM MIRAGE or Beau Rivage. If Provider fails to satisfy such requirement or if MGM MIRAGE or Beau Rivage, or any parent company, subsidiary or affiliate of MGM MIRAGE or Beau Rivage, is directed to cease business with Provider by any such authority, of if MGM MIRAGE or Beau Rivage shall in good faith determine, in MGM MIRAGE's or Beau Rivage's sole and exclusive judgment, that Provider or any of their officers, directors, employees, agents, designees or representatives (a) is or might be engaged in, or is about to be engaged in, any activity or activities, or (b) was or is involved in any relationship, either of which could or does jeopardize MGM MIRAGE's or Beau Rivage's business or such licenses, or those of their parent company, subsidiaries or affiliates, or if any such license is threatened to be, or is, denied, curtailed, suspended or revoked, this Agreement may be immediately terminated by MGM MIRAGE or Beau Rivage without liability to Provider. In addition, Provider hereby acknowledges that it is illegal for a denied license applicant or a revoked licensee (pursuant to the laws, rules and regulations of the Nevada and Mississippi gaming authorities), or a business organization under the control of a denied license applicant or a revoked licensee, to enter into, or attempt to enter into, a contract with MGM MIRAGE or Beau Rivage without the prior approval of the Nevada and Mississippi Gaming Commissions. Therefore, Provider hereby affirms, represents and warrants to MGM MIRAGE and Beau Rivage that it is not a denied license applicant, a revoked licensee or a business organization under the control of a denied license applicant or a revoked licensee, and Provider hereby agrees that this Agreement is subject to immediate termination by MGM MIRAGE or Beau Rivage if Provider should become a denied license applicant, a revoked licensee or a business organization under the control of a denied license applicant or a revoked licensee. In the event that this Agreement is terminated by MGM MIRAGE or Beau Rivage pursuant to this Section, and as applicable, (a) Beau Rivage shall pay to Provider a pro rata portion of the Performance Fee for any such portion of the Performance performed prior to such termination for which Provider has not already been paid and (b) Provider shall refund to Beau Rivage any portion of the Performance Fee, if any, which Beau Rivage has paid to Provider in connection with a portion of the Performance that has not, as of the date of such termination, been presented by Provider.

10. All notices, approvals and consents, demands and requests, which may be or are required to be given to any party by another party shall be in writing and shall be deemed to have been properly given if and when delivered personally, by telecopy (when sender receives confirmation), or sent by certified mail, return receipt requested, addressed as follows:

    If to Customer:

    _____
    _____
    _____

    Copy to:
    Beau Rivage Resort and Casino
    875 Beach Boulevard
    Biloxi, Mississippi 39530
    Attn: General Counsel


    If to Provider:

    _____
    _____
    _____

11. The Agreement and this Addendum constitutes the entire agreement between Customer and Provider and there are no agreements, understandings, conditions, or representations, express or implied, with reference to the subject matter hereof that are not merged within or superseded hereby.

12. Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitration proceedings shall be conducted in Harrison County, Mississippi. Any and all legal, accounting and other costs and expenses incurred by the prevailing party shall be borne by the non-prevailing party. This Agreement shall be governed by and construed under and pursuant to the laws of the State of Mississippi applicable to contracts made and to be performed entirely within such State without regard to the conflicts of laws principles of such State.

13. "EQUAL EMPLOYMENT OPPORTUNITY – The EEO/AA Clauses are hereby incorporated by reference as required by 41 CFR 60-1.4, 41 CFR 60-250.4 and 41 CFR 60-741.4 and the Provider represents by signature and acceptance of this contract that he/she will comply with such Acts, Executive Order and rules and regulations and amendments thereto to the extent that same are applicable to the manufacture and/or sale of the goods and/or services supplied hereafter."

14. Provider hereby agrees that in the event (i) there is any default or alleged default by MGM MIRAGE or Beau Rivage under the Agreement or (ii) Provider has or may have any claim arising from or relating to the terms hereof, Provider shall not commence any lawsuit or otherwise seek to impose any liability whatsoever against Kirk Kerkorian or Tracinda Corporation. Provider hereby further agrees that neither Kirk Kerkorian nor Tracinda Corporation shall have any liability whatsoever with respect to this Agreement or any matters relating to or arising from this Agreement. Provider hereby further agrees that it shall not assert, or permit any party claiming through it to assert, a claim or impose any liability against either Kirk Kerkorian or Tracinda Corporation, either collectively or individually, as to any matter or thing arising out of or relating to this Agreement or any alleged breach or default of this Agreement by MGM MIRAGE or Beau Rivage. In addition, Provider agrees that neither Kirk Kerkorian nor Tracinda Corporation,

3

individually or collectively, is a party to this Agreement or is liable for any alleged breach or default of this Agreement by MGM MIRAGE or Beau Rivage. Provider hereby further acknowledges and agrees to look solely to Beau Rivage, and not to MGM MIRAGE, its parent companies or other subsidiaries or affiliates, for any actual or alleged breach or default, if any, by MGM MIRAGE or Beau Rivage of this Agreement. In addition to Beau Rivage's right to do so, MGM MIRAGE shall have the right to exercise on behalf of Beau Rivage any and all of Beau Rivage's rights and remedies under this Agreement.

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the date first set forth above.

Beau Rivage Resorts, Inc.
BY: _____
George Corchis
TITLE: President
DATE: 1/18/2008

ProLabor One, LLC
BY: _Samvel Nikoghosyan_
PRINTED NAME: SAMVEL NIKOGHOSYAN
TITLE: President of operations
DATE: 01/18/2008

4